```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
SHELLEY HNOT and HEIDI SCHELLER, on                         :
behalf of themselves and all similarly situated             :
persons,                                                    :
                                                            :
                        Plaintiffs,                         :
                                                            :       01 Civ. 6558 (GEL)
             -v-                                            :
                                                            :       OPINION AND ORDER
WILLIS GROUP HOLDINGS LTD., et al.,                         :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------x
```

Linda P. Nussbaum and Christine E. Webber, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., New York, NY; Martin R. Lee, Warshaw Burstein Cohen Schlesinger & Kuh, L.L.P., New York, NY, for plaintiffs.

Bettina B. Plevan and Myron D. Rumeld, Proskauer Rose, L.L.P., New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

Plaintiffs move to modify the class certification order, to amend the deadline for non-expert discovery, and to compel additional discovery. The motion will be denied.

## BACKGROUND

Plaintiffs Shelly Hnot and Heidi Scheller ("plaintiffs"), representatives of a certified class of high-level female employees at Willis Group Holdings Ltd. and affiliated entities ("defendants" or "Willis"), brought suit in 2001, alleging illegal employment discrimination on the basis of sex. Details of the dispute can be found in numerous prior decisions of the Court. See Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476 (S.D.N.Y. 2005); see also Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2006 WL 2079326 (S.D.N.Y. July 24, 2006);

Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2005 WL 831665 (S.D.N.Y. Apr. 8, 2005); Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2005 WL 831664 (S.D.N.Y. Apr. 8, 2005); Hnot v. Willis Group Holding Ltd., 01 Civ. 6558 (GEL), 2004 WL 1794493 (S.D.N.Y. Aug. 10, 2004). The present Opinion recites only certain details relating to discovery and class certification which are material to the instant motion.

I. Discovery Deadlines

On August 2, 2002, the Court held an off-the-record conference to discuss certain discovery issues, including the geographic scope of discovery. The details of the conference are disputed. According to plaintiffs, the Court resolved a discovery dispute regarding plaintiffs' access to defendants' computerized employee database by ordering defendants to provide access to the records through December 31, 2001. Plaintiffs further contend that the Court directed plaintiffs not to pursue discovery of post-2001 computer database information until the Court ruled on plaintiffs' motion for class certification. (P. Mot. to Modify Class Cert. Order ("P. Mem.") at 3; P. Reply in Support of Mot. to Modify Class Cert. Order ("P. Reply") at 5; Webber Decl. in Support of P. Mem. ¶ 2; Lee Decl. in Support of P. Mem. ¶ 3.) In contrast, defendants assert that the parties had already reached an agreement at the time of the conference that discovery of database information would not extend beyond 2001, and that the Court issued no ruling on the matter. (D. Mem. at 7.) As discussed in more detail infra, the Court does not accept either account in its entirety. Regardless of whose recollection is correct, however, it is beyond question that a case management plan signed by the parties and endorsed by the Court more than two months after the August conference set September 30, 2003, as the date by which

"all non-expert discovery" would be completed.[1] (11/22/02 Case Management Plan ¶ 4.) The Order further provided that the discovery deadline could be reconsidered by the Court at a subsequent conference to be held on September 26, 2003.

The conference originally scheduled for September 26, 2003, took place on October 31, 2003. At that time, the Court set a briefing schedule for plaintiffs' motion to expand the geographic scope of discovery to encompass a nationwide computer database. The Court also approved the parties' Revised Case Management Plan ("RCMP"), signed by counsel for both sides, which extended the deadline for the completion of "all non-expert discovery" to February 28, 2004. The only discovery authorized by the RCMP to take place after the February 2004 deadline was expert discovery, a limited number of depositions in connection with plaintiffs' motion for class certification, and additional depositions, to the extent permitted by the Court, following a ruling on class certification. Expressing concern about the slow pace of the case, the Court emphasized that unless plaintiffs' motion to compel discovery of a nationwide database was granted, the discovery deadlines established by the RCMP would be final, and that the parties should not expect any further extension.

The Court denied plaintiffs' motion to compel nationwide database discovery at a conference held on the record on January 9, 2004.[2] After the Court rendered its ruling, a

---

[1] The case management plan signed in November 2002 superseded a case management plan approved in January 2002, which had set the discovery deadline as September 30, 2002. That deadline was amended in September 2002 by consent of the parties.

[2] Due to a typographical error, the transcript of the January 9, 2004, conference is dated January 9, 2003.
   This Court's denial of plaintiff's motion at the January 2004 conference was not the first denial of plaintiffs' motion to compel discovery of a nationwide computer database. The prior motion was denied without prejudice to renew in an Order entered on December 6, 2002.

3

discussion ensued regarding open discovery and scheduling issues. It is clear from the transcript that both the parties and the Court understood that the February 2004 deadline for completion of non-expert discovery remained in place (see 1/9/04 Tr. at 9:21-22, 10:23 to 12:17, 13:3-7, 15:2 to 16:16, 17:14-23, 18:4-7, 24:10-25), with only limited exceptions discussed at that conference and/or specifically contemplated by the RCMP.[3]

II. Class Certification

On June 14, 2004, plaintiffs moved to certify a class consisting of "all current and former female employees who have been employed by the defendants in positions eligible for the award of officer titles such as Assistant Vice President, Vice President and Senior Vice President at any time from October 30, 1998 through the present." (P. Mem. in Support of Class Cert. at 2.) Though the plaintiffs thus apparently sought certification of a class of employees employed by defendants through the date of the motion's submission, the Court mistakenly interpreted plaintiffs' proposed class as including only employees who worked for defendants from 1998 through 2001, and certified the class accordingly. See Hnot, 228 F.R.D. at 480, 486-87. The misunderstanding resulted from the fact that the evidence presented by plaintiffs to support certification did not extend beyond that time period. (See P. Reply Mem. at 2 (conceding that "the data analysis Plaintiffs relied upon in support of their motion [for class certification] did not extend past 2001").) As a result of the Court's narrow interpretation of the proposed class, the

---

[3] Defense counsel, for example, raised the possibility of conducting additional depositions relating to damages after the February 2004 deadline. The Court indicated that such depositions would be permissible provided that they "[didn't] delay the rest of the progress." (1/9/04 Tr. at 12:16-17.) The RCMP, moreover, specifically allowed a limited number of depositions to take place after submission of the motion for class certification and after a ruling on class certification. (RCMP ¶ 6-7.)

4

certification order did not address whether a broader class could or should be certified based on the data submitted with plaintiffs' original class certification motion.

At the first case management conference held after the Court certified the class, plaintiffs' counsel raised the issue of the class's temporal scope, noting that the Court had certified a narrower class than that proposed in plaintiffs' motion. The Court directed the parties to attempt an amicable resolution of the issue as part of a settlement conference to take place before Magistrate Judge Freeman. When settlement failed, the Court endorsed a proposed briefing schedule to resolve the disagreement regarding the class period.

The parties having now fully briefed the issue, it is clear that what plaintiffs actually seek is not merely a modification of the Court's certification order to extend the class period, but also a modification of the RCMP's discovery deadline and a corresponding order compelling additional discovery. The new discovery would consist primarily of access to information in defendants' computer database from 2002 to at least the end of 2005. (See P. Mem. at 9-10.) Plaintiffs also move to extend the class period to include any employees who have worked for defendants from 1998 through the date of trial (id.); the proposed extension thus goes significantly beyond what plaintiffs requested in their original June 14, 2004, class certification motion, which proposed a class period extending only to the date of that motion's submission.[4]

---

[4] Plaintiffs appear not to recognize that their current motion would extend the class period beyond what they originally requested, presumably because they have adopted an unusually broad — and in the Court's view, incorrect — understanding of the term "the present." Contrary to what plaintiffs seem to assume, a statement referring to "the present" generally does not refer to any moment in time beyond when the statement was made. Thus, for example, a June 14, 2004, motion to certify a class of employees employed "through the present" should be interpreted to refer to employees employed through June 14, 2004. (The same logic applies to discovery requests; thus, a discovery request dated January 16, 2002, for documents extending "to the present" only requires production of documents in existence on or before January 16,

Defendants oppose plaintiffs' motion in all respects.

## DISCUSSION

I. Motion to Amend the RCMP and Compel Additional Discovery

Compelling the discovery now sought by plaintiffs would require the Court to modify the RCMP signed on October 31, 2003, which provided that *all* non-expert fact discovery would be completed by February 28, 2004. Federal Rule of Civil Procedure 16(b) provides that scheduling orders "shall not be modified except upon a showing of good cause and by leave of the district judge." The requirement of good cause reflects the crucial role such orders play in allowing a district court to effectively control and manage its docket. See LaFlamme v. Carpenters Local # 370 Pension Plan, 220 F.R.D. 181, 186 (N.D.N.Y. 2003); see also Marcum v. Zimmer, 163 F.R.D. 250, 253 (S.D.W. Va. 1995) ("[A] scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of [Federal Rule of Civil Procedure] 1 in 'secur[ing] the just, speedy, and inexpensive determination of every action,'" citing Fed. R. Civ. P. 1 (third alteration in original)). In order to establish good cause, the moving party must demonstrate diligence in its effort to comply with the court-ordered deadlines. See Parker v. Columbia Pics. Indus., 204 F.3d 326, 340 (2d Cir. 2000); Lincoln v. Potter, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006); see also Goewey v. United States, 886 F.

---

2002.) If plaintiffs intend to refer to the future, they must use language that makes that clear. See, e.g., Carlson v. C.H. Robinson Worldwide, Inc., 02 Civ. 3780 (JNE), 2005 WL 758602, at *47 (D. Minn. Mar. 31, 2005) (certifying a proposed class of "[a]ll females employed on a full-time salaried basis . . . at any time since August 17, 2000, who have been *or may be* subjected to [defendant's] challenged compensation policies and practices" (emphasis added)); Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 141-42 (N.D. Cal. 2004) (certifying a proposed class of "[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26, 1998 who have been *or may be* subjected to Wal-Mart's challenged pay and management track promotions policies and practices" (emphasis added)).

Supp. 1268, 1283 (D.S.C. 1995) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

Plaintiffs argue that there is good cause for their failure to meet the February 2004 discovery deadline or to request an extension before the close of discovery because they "were acting pursuant to a more specific Court direction." (P. Reply at 5.) The argument is based on the August 2, 2002, off-the-record conference, at which, according to plaintiffs, the Court barred them from pursuing post-2001 database discovery at that time and specifically directed them to wait until resolution of the class certification issue before seeking the post-2001 data. According to plaintiffs, the Court explained that pre-2002 database information would provide sufficient data to support a motion for class certification, and thus there was no immediate need to allow discovery beyond that date. (See id.; P. Mem. at 3.)

The Court doubts, in substantial part, plaintiffs' account of the August 2, 2002, conference. In the Court's recollection, the Court set December 31, 2001, as the cut-off date for database discovery simply because that date marked the end of the last full calender year for which database information was available at the time. The Court does not recall issuing any order barring plaintiffs from seeking updated data at appropriate intervals or directing plaintiffs "to wait until after class certification before seeking more data." (P. Reply at 5; see also id. at 1.) Nor do notes taken by chambers staff during the conference suggest that such an order was issued. It is not this Court's normal practice, moreover, to direct parties not to submit motions or discovery requests that the Federal and Local Rules otherwise permit them to submit.[5]

---

[5] This is not to say that the Court adopts wholesale defendants' account of the conference. Defendants' contention that there was no discussion regarding the temporal scope of database discovery at the August 2002 conference, for example, is belied by defense counsel's

7

The real flaw in plaintiffs' position, however, is that regardless of what transpired at the August 2002 conference, plaintiffs subsequently failed to take even minimally adequate steps to protect their alleged right to the discovery now at issue. Indeed, plaintiffs' own representations to the Court helped to preclude the post-certification discovery they now seek.

Most significant in this respect is the October 2003 RCMP, in which plaintiffs unambiguously expressed their willingness to abide by a February 28, 2004, deadline for *all* non-expert discovery. (See RCMP at 1 ("The parties have conferred and have agreed upon a joint proposed revised case management plan as follows: . . . Date by which all non-expert discovery is to be completed: February 28, 2004.").) The RCMP, which superseded any prior scheduling orders, specifically contemplated limited exceptions to the February 2004 deadline, but the exceptions did not include plaintiffs' current request for discovery of post-2001 database information.[6] As noted supra, the Court emphasized in endorsing the RCMP that the deadlines set forth therein would be final unless the Court later allowed nationwide discovery (which it did not).

Plaintiffs had an opportunity at the time of the RCMP's adoption to notify the Court of their anticipated need for further database discovery in the event of class certification, to remind

---

statement at a conference held in November 2002. Defense counsel noted that "[a]t the last conference, the Court ruled that [defendants] would, at least for purposes of this database, stop at the end of 2001." (11/13/02 Tr. at 33:17-19.)

[6] In light of the RCMP's clear designation of February 28, 2004, as the cut-off date for "all" non-expert discovery, plaintiffs' argument that the order was not "explicit" on the question of the final non-expert discovery deadline borders on the frivolous. (See P. Mem. at 4 n.3; Webber Decl. in Support of P. Mem. ¶ 4.) Moreover, under the principle of *expressio unius est exclusio alterius*, cf. Guo v. U.S. Dep't of Justice, 422 F.3d 61, 64 (2d Cir. 2005), the inclusion in the RCMP of specific exceptions to the fact discovery deadline strongly implies that additional exceptions were not contemplated.

the Court of what they allege to have occurred at the August 2002 conference, and to request a corresponding amendment to the RCMP. Instead, plaintiffs submitted to the Court for its adoption a discovery scheduling order that, in contrast to what they now contend had earlier been ordered, made no reference to plaintiffs' alleged right to reopen or supplement database discovery after certification of a class. Needless to say, had plaintiffs asserted such a right in October 2003, any dispute about its existence would have been resolved nearly three years ago. Plaintiffs' failure to address the issue then casts considerable doubt on their present claim that they always understood there to be an open discovery issue to be addressed after class certification.

Plaintiffs also had an opportunity to raise the issue at the January 2004 conference, at which the Court commented that "[i]t sounds like the facts are all known or will all be known within the next couple months" (1/9/04 Tr. at 18:4-5), and expressly inquired whether there were outstanding discovery issues (id. at 10:24-25). In view of plaintiffs' express and voluntary representation — well after the August 2002 conference — that they could meet a February 2004 deadline for all non-expert discovery, as well as their failure to seek the necessary exceptions and/or modifications to the RCMP despite multiple opportunities to do so, there is no basis for concluding that plaintiffs have been diligent in pursuing the discovery now at issue. There is therefore no good cause to modify the RCMP to allow discovery of post-2001 database information.[7]

---

[7] According to counsel for plaintiffs, "[i]t was Plaintiffs' understanding that updating the database, which had previously been discussed as something that would be done before trial, was not governed by the close of general discovery." (Webber Decl. in Support of P. Mem. ¶ 5.) The fact that plaintiffs would disregard the RCMP's explicit deadline for "all non-expert discovery" based on this alleged off-the-record "understanding," however, makes this

9

This Court does not deny the value of maintaining some flexibility in scheduling. Blind and unbending adherence to technicalities in a scheduling order may in some cases be unreasonable or unjust, and may ultimately frustrate rather than promote the timely and efficient resolution of the litigation. The discovery matter in dispute here, however, is no mere technicality; granting plaintiffs' motion would disrupt defendants' (and the Court's) reasonable understanding that non-expert discovery in this case has been closed in all material respects for over two years. Nor is there anything remotely unreasonable or unjust in holding plaintiffs to major deadlines in a case management plan to which they themselves consented even *before* the Court's endorsement of the RCMP made those deadlines binding.

The burdens that would be imposed by plaintiffs' discovery request, moreover, are not trivial. Even under plaintiffs' conservative estimate, the production of the requested computer database information could require 250 hours of work (P. Reply at 9), to say nothing of the additional depositions and expert reports that are sure to follow production of the database.[8]

---

"understanding" difficult to rationalize, and further confirms plaintiffs' lack of diligence.

[8] Of course, defendants might undergo the burdens of additional discovery regardless of how the Court rules on this motion, since additional employees or former employees of Willis may file suit alleging discrimination during the 2002-2005 period. At this stage, however, it cannot be assumed that other plaintiffs will appear, that any new litigation will survive to the discovery stage, or that any new plaintiffs will require production of the database sought by plaintiffs here. The mere possibility that another litigant in another case will later have a legitimate argument for compelling discovery of the material at issue does not justify imposing an immediate, unreasonable discovery burden on defendants in the present case.

In any event, even if compelling discovery imposed only a modest burden, the lack of good cause to amend the RCMP would be sufficient to justify the Court's holding. See LaFlamme, 220 F.R.D. at 186 ("'[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end,'" quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).

Plaintiffs make a passing reference to Federal Rule of Civil Procedure 26(e), arguing that they do not seek to re-open discovery, but rather to ensure that Willis complies with its Rule 26(e) obligation to supplement responses to existing discovery requests. (P. Mem. at 7.) The relevant subsection of the Rule creates "a duty seasonably to amend a prior response . . . to a[] . . . request for production . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties." Fed. R. Civ. P. 26(e)(2).

Plaintiffs' decision to limit their Rule 26(e) argument to a single sentence is not surprising, given that the Rule, as applied to the issue of database discovery, cannot be read to require production of post-2001 information. The parties agree that the only request for production of database information to which defendants ever had a duty to respond was a request to produce information through December 31, 2001.[9] Rule 26(e) therefore only imposes on defendants a continuing obligation to amend their responses to that request to the extent they learn of gaps or errors in the *pre-2002* database information they provided. Under the plain language of the Rule, however, there is no general duty to produce *post-2001* database information, for which there was never any enforceable request for production (or corresponding duty to disclose) in the first place. Cf. Ward v. Nat'l Geographic Soc'y, 99 Civ. 12385 (LAK), 2002 WL 27777, at *2 (S.D.N.Y. Jan. 11, 2002) (holding that in the absence of a duty to disclose under Rule 26(a)(1), there was no duty to supplement under 26(e)(1)); In re High Fructose Corn Syrup Antitrust Litig., MDL 1087, 95 Civ. 1477, 2000 WL 33180835, at *3 (C.D. Ill. July 19,

---

[9] Plaintiffs claim that this limitation was due to a Court order, while defendants claim that there was an express agreement between the parties to so limit discovery.

2000) ("[P]ursuant to the clear language of Federal Rule of Civil Procedure 26(e)[, defendants] were under no obligation, absent an order from the Court or upon discovering that a response to the July 15, 1997, discovery request was materially incomplete or incorrect, to provide information not yet in existence as of the date they answered the discovery request."). Put differently, a complete and accurate set of computer data for the period ending December 31, 2001 is not rendered incomplete or incorrect for purposes of Rule 26(e) simply by virtue of the fact that defendants also possess data pertaining to the entirely different time period beginning January 1, 2002.[10]

Plaintiffs' final argument for additional database discovery is based on their alleged need "to make an effective case for injunctive relief." (P. Reply at 9.) If they win at trial, plaintiffs explain, defendants will oppose injunctive relief on the ground that there is no probability of future violations. (P. Mem. at 7.) This argument is premature at best. As defendants note, "the Court retains the responsibility for determining the propriety of injunctive relief, [and] could consider the need for additional evidence related to that issue, including data for the post-2001 period, if and when plaintiffs prevail before a jury on their initial claims of pattern and practice discrimination." (D. Mem. at 20.) It would be inappropriate to suddenly impose significant additional discovery obligations on defendants at this stage on the ground that it might be useful *if* plaintiffs prevail before the jury.

---

[10] With respect to any other new discovery requests, the Court's conclusion with respect to Rule 26(e) is essentially the same: Defendants are obliged to amend prior responses to the extent necessary to correct or complete information previously provided, but Rule 26(e) requires nothing more.

II.        Motion to Modify Class Certification Order

Plaintiffs' briefing makes clear that their motion to modify the class certification order is contingent on the granting of the additional discovery discussed above. Their opening brief explains that if the Court rejects the motion to compel discovery of updated electronic data, "the impact on the class'[s] ability to present appropriate evidence in support of [its] claims would be so undermined that it would not be appropriate to extend the class definition." (P. Mem. at 5 n.3.) Their reply brief states that while additional database discovery is not "necessary" to certify a broader class, the new discovery "would be a necessity for Plaintiffs to obtain a fair trial on their claims for the post-2001 period." (P. Reply at 7.) Additional statements in plaintiffs' briefs similarly indicate, albeit less explicitly, that plaintiffs believe that modification of the class period is appropriate only if the Court rules in plaintiffs' favor on the issue of further discovery. (See, e.g., P. Mem. at 4-5 ("It would be most consistent with Title VII and the litigation history of this case to require Willis to produce updated data to Plaintiffs, and, *if* the data is consistent with that produced for the earlier time period, to modify the class definition . . . ." (emphasis added)); id. at 5 ("*If* Willis'[s] employee data demonstrates that women employees were paid less and promoted less often than their male peers in 2002-2005 . . . then the class definition should certainly encompass the additional time period." (emphasis added).) In view of plaintiffs' concessions and the Court's denial of plaintiffs' motion to compel the discovery at issue, plaintiffs' motion to modify the class certification order is denied.

## CONCLUSION

Since plaintiffs have failed to establish a sufficient basis to amend the RCMP, to compel further discovery, or to modify the class certification order, their motion [Doc. #97] is denied.

SO ORDERED:

Dated: New York, New York
      August 17, 2006

_____
GERARD E. LYNCH
United States District Judge