UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
SHELLEY HNOT and HEIDI SCHELLER, on                          :
behalf of themselves and all similarly situated              :
persons,                                                     :
                                                             :
                        Plaintiffs,                          :
                                                             :        01 Civ. 6558 (GEL)
              -v-                                            :
                                                             :        **OPINION AND ORDER**
WILLIS GROUP HOLDINGS LTD., et al.,                          :
                                                             :
                        Defendants.                          :
                                                             :
-------------------------------------------------------------x

Joseph M. Sellers, Christine E. Webber, Cohen,
Milstein, Hausfeld & Toll, P.L.L.C., New York,
New York, Martin R. Lee, Avi Lew, Warshaw
Burstein Cohen Schlesinger & Kuh, LLP,
New York, New York, for plaintiffs.

Bettina B. Plevan, Myron D. Rumeld, Proskauer
Rose, LLP, New York, New York, for defendants.

GERARD E. LYNCH, District Judge:

        Defendants in this class action employment discrimination case move to exclude the

proposed testimony of plaintiffs' expert, Eugene Borgida.  Defendants argue that Borgida's

testimony is not sufficiently tied to the facts of the case, or in the alternative, that his testimony is

unfairly prejudicial.  Defendants' motion will be denied.

        The standard for the admissibility of expert testimony is set forth in Federal Rule of

Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the case.

Fed. R. Evid. 702.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993) (charging trial judges with the responsibility of acting as "gatekeepers," in light of the fact that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (clarifying that this gatekeeper function applies to all expert testimony, not just scientific testimony).  "The determination as to the relevance and reliability of such evidence is committed to the sound discretion of the trial court."  Daubert, 509 U.S. at 591.

The Supreme Court provided district courts with a checklist for assessing the reliability of expert testimony.  This list of "specific factors" "neither necessarily nor exclusively applies to all experts or in every case."  Kumho Tire, 526 U.S. at 141.  Listed considerations, which are "meant to be helpful, not definitive," id. at 151, include whether an expert's theory can be tested, "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," and "general acceptance."  Daubert, 509 U.S. at 593-594.  See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002) ("[T]he Daubert inquiry is fluid and will necessarily vary from case to case.").  Thus, "[t]he trial court is to use its discretion to determine what are reasonable criteria of reliability and whether the proposed testimony meets those criteria based on the peculiarities of the case before it."  Primavera

2

Familienstifung v. Askin, 130 F. Supp. 2d 450, 522 (S.D.N.Y. 2001).  However, "[t]he Rules'

basic standard of relevance . . . is a liberal one," Daubert, 509 U.S. at 587, and "the district

court's Daubert gatekeeping role does not permit the district court, in ruling on evidentiary

sufficiency, to reject admissible expert testimony."  Amorgianos, 303 F.3d at 267-68.  See Fed.

R. Evid. 702, Advisory Comm. Notes ("A review of the caselaw after Daubert shows that the

rejection of expert testimony is the exception rather than the rule.").

Defendants do not challenge Borgida's qualifications; their own counter-expert,

Christopher Winship, acknowledges his expertise.  (Winship Dep. 85-86.)  Winship also agrees

that Borgida's basic methods are scientifically appropriate, and agrees that gender stereotyping

of the sort Borgida wants to explain to the jury exists.  (Id. 86.)  Winship's criticisms of

Borgida's summary of the literature unquestionably present the sort of questions that go to the

weight of the testimony and not its admissibility.  The selection of the most relevant material to

present is the sphere of academic experts, and it is unsurprising that different experts will

highlight different research findings.  Such differences may be properly presented to the jury by

the parties at trial, and do not require or call for exclusion of the expert's testimony.  See Howard

v. Walker, 406 F.3d 114, 127 (2d Cir. 2005) ("On cross-examination, an attorney is free to

challenge an expert's methodology, . . . conclusions, and the bases for [those] conclusions.").

Defendants' only substantial arguments for exclusion are that Borgida's testimony does

not "fit" the facts of the case and is therefore not relevant, see Daubert, 509 U.S. 591-92

(requiring expert testimony to exhibit a connection between the expert's "scientific knowledge"

and "the pertinent inquiry"), and that the testimony is unduly prejudicial because Borgida makes

factual determinations that should be left to the jury, see United States v. Duncan, 42 F.3d 97,

101 (2d Cir. 1994) (expert testimony that "undertakes to tell the jury what result to reach . . . does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's").  The arguments are somewhat divided against themselves: on the one hand, defendants argue that Borgida wants to usurp the role of the jury and tell it how to rule on the specific facts of the case, while on the other they argue that he pays insufficient attention to those facts.  As the contradiction suggestions, defendants are scrambling for objections, neither of which quite fit the case.  Properly understood, the testimony is admissible.

The basic subject matter of Borgida's proposed testimony is the operation of gender stereotyping and the kinds of conditions in which such stereotyping most commonly flourishes. (P. Mem. 1.)  The Supreme Court has specifically recognized the utility of such testimony.  Price Waterhouse v. Hopkins, 490 U.S. 228, 255-56 (1989).  The underlying generalizations are hardly controversial – defendants' expert basically agrees with the broad thrust of Borgida's summary – and indeed few jurors will be surprised at the basic outlines of the testimony.  That, however, does not mean the testimony adds nothing to ordinary experience: expert testimony grounded in academic study and practical experience not available to the average layperson can be helpful to the jury.  See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995) (characterizing expert testimony that stated "an obvious concept" as nevertheless going "far beyond that of a layman").  Such testimony can be valuable in giving a jury context within which to evaluate the particular evidence relating to the workplaces at issue here.  See, e.g., Schwab v . Philip Morris USA, Inc., 449 F. Supp. 2d 992, 1134 (E.D.N.Y. 2006) ("Freely admitted is expert testimony that is likely to substantially assist the average person in understanding the case – even if it simply explains facts and evidence already in the record.")

4

Defendants contend that their workplace does not in fact exhibit the characteristics Borgida cites as typically fostering gender stereotyping.  If that is so, it does not mean that Borgida's general testimony is unhelpful or unfairly prejudicial.  To the contrary, if Borgida tells the jury that certain conditions are conducive to permitting gender stereotyping to influence employment decisions, and plaintiffs fail to show that those circumstances are present in defendants' workplace, the expert testimony will neither confuse nor mislead the jury, but rather will help the jury to critically evaluate the plausibility of plaintiffs' claims of discrimination. See Girden v. Sandals Int'l, 262 F.3d 195, 204 (2d Cir. 2001) ("[J]urors have the latitude to analyze the evidence in a case, to accept part of it and to reject part of it, and to draw any inferences from the testimony, exhibits, and circumstances that they deem reasonable.").

Defendants are on somewhat firmer ground in challenging those portions of Borgida's testimony in which Borgida identifies particular features of defendants' workplaces as illustrating factors noted in the literature.  Defendants argue that the testimony will "mislead the jury into believing that Borgida has decided for them some of the key factual issues upon which his social framework analysis is based."  (D. Mem. 9.)  Although Borgida neither purports to have studied the record in full (see Borgida Dep. 91, 259-62), nor purports to offer an opinion on whether any discrimination occurred at Willis (see, e.g., id. 40-41, 43, 46, 56, 79-80, 99, 110-11), he does identify particular circumstances allegedly present in the evidence as consistent with the phenomena he describes as a general matter.  (Borgida Rep. 8-9, 22-25.)  That creates a subtle distinction that has at least some potential for confusion.

However, this potential confusion is hardly fatal to the admissibility of the testimony, which stays well within proper bounds and does not undertake to tell the jury what to think about

the particular facts of the case.  It is permissible for an expert to illustrate general principles by reference to evidence in the record.  See, e.g., Schwab, 449 F. Supp. 2d at 1134.  It will of course be up to the jury to decide whether that evidence is credible, to determine the facts to which the expert purports to apply his expertise, and to assess the credibility of the expert's claim that the theory fits the circumstances of the case.  Like the Second Circuit, this Court has not found jurors in this district overly credulous of hired experts.  See United States v. Jakobetz, 955 F.2d 786, 797 (2d Cir. 1992) (rejecting the assumption that a jury of this district "will be so dazzled or swayed" by expert testimony "as to ignore [contradictory] evidence").  In any event, limiting instructions reminding the jury of its role and of the limits of expert testimony will clarify the extent of their consideration of such testimony.  See United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

Finally, the Court is constrained to note the disappointingly tendentious quality of defendants' briefing of these issues.  Defendants correctly note that some courts have excluded Borgida's testimony, see Downey v. Coal. Against Rape & Abuse, Inc., No. 99-3370, 2005 WL 984394, at *9 (D.N.J. Apr. 27, 2005); Jenson v. Eveleth Taconite Co., 824 F. Supp. 847, 864 (D. Minn. 1993), but they totally ignore contrary authority within this district, see Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 355 (S.D.N.Y. 2007), and fail to cite the many cases, including the seminal Supreme Court case, generally approving testimony of this kind, see Price Waterhouse, 490 U.S. 228; Dukes v. Wal-Mart, Inc., 222 F.R.D. 189, 191-92 (N.D. Cal. 2004); Hurst v. F.W. Woolworth Co., No. 95 Civ. 6584, 1997 WL 685341, at *2 (S.D.N.Y. Nov. 3, 1997); Butler v. Home Depot, Inc., 984 F. Supp. 1257, 1265 (N.D. Cal. 1997);

Flavel v. Svedala Indus., Inc., No. 92-C-1095, 1994 WL 761447, at *1 (E.D. Wis. Oct. 25, 1994); Stender v. Lucky Stores, Inc., 803 F. Supp. 259, 301-303, 328 (N.D. Cal. 1992); Robinson v. Jacksonville Shipyards, Inc., 760 F. Supp. 1486, 1505 (M.D. Fla. 1991).

It is impossible to believe that lawyers the quality of those representing defendants were unaware of this authority. Defendants were unquestionably aware of Int'l Healthcare, since they make a point of claiming that Borgida's report here is extremely similar to that offered in that case, in an effort to suggest that his testimony is insufficiently attentive to the specific facts of this one. (D. Mem. 8 n.6.) Nevertheless, they conspicuously fail to identify the case by name, to acknowledge that the court there held the testimony admissible, or to cite the opinion so ruling anywhere in their brief. Such behavior verges on the disingenuous. Although lawyers are expected to make the strongest argument possible for their clients, they undermine their own credibility when they ignore authority unhelpful to their position.

Defendants' motion to exclude the testimony of Eugene Borgida is denied.

SO ORDERED.

Dated: New York, New York
      June 1, 2007

GERARD E. LYNCH
United States District Judge

7