UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
SHELLEY HNOT and HEIDI SCHELLER, on :
behalf of themselves and all similarly situated :
persons, :
:
Plaintiffs, :
: 01 Civ. 6558 (GEL)
-v- :
: **OPINION AND ORDER**
WILLIS GROUP HOLDINGS LTD., et al., :
:
Defendants. :
:
------------------------------------------------------------x

Joseph M. Sellers, Christine E. Webber, and Llezlie
L. Green, Cohen, Milstein, Hausfeld & Toll P.L.L.C.,
and Martin R. Less and Avi Lew, Warshaw Burstein
Cohen Sshlesinger & Kuh, LLP, for plaintiffs.

Bettina B. Plevan (Jeremy M. Brown, Kristin S. Rozic,
and Keri L Reid, of counsel), Proskauer Rose LLP,
 for defendants.

GERARD E. LYNCH, District Judge:

Plaintiffs petition pursuant to 42 U.S.C. § 2000e-5(k) for an award of attorney's fees and expenses in connection with an employment class action that resulted in a settlement approved by this Court. Defendants challenge the fees requested as excessive. For the following reasons, plaintiffs' petition will be granted in part.

## BACKGROUND

Plaintiffs brought this sex discrimination suit against their current or former employer, Willis Group Holdings, Ltd., et al. ("Willis"), a global insurance brokerage company, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended, 42 U.S.C. § 1981a, and the laws of New York, New Jersey and Massachusetts. The dispute began in 1999

with the filing of EEOC charges on behalf of several Willis employees, and a suit was brought in this Court in 2001. (Pls. Mem. 1.) From 2002 through 2004 the parties engaged in discovery, and in 2005, plaintiffs moved for class certification, which was granted. See Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476, 486-87 (S.D.N.Y. 2005). The class encompassed all current and former female employees who were employed by defendant in the Northeast Region in positions eligible for various officer titles during an approximately three year period. Id. at 480. Additional pre-trial motions followed, with trial scheduled to begin in June 2007. The case was settled on the eve of trial, and in February 2008 – nearly nine years after the dispute began – that settlement was approved by this Court.

The settlement provided for monetary relief for the class as well as changes in Willis policies and procedures. The parties did not agree on an award of attorney's fees and expenses, and left the amount of such an award to be decided by the Court. Plaintiffs have been represented by two law firms, Cohen, Milstein, Hausfeld & Toll ("Cohen") and Warshaw Burstein Cohen Schlesinger & Kuh, LLP ("Warshaw"), and the petition seeks $2,160,009.09 in fees and $389,238.57 in expenses for Cohen and $1,689,644.50 in fees and $55,267.99 in expenses for Warshaw. The petition covers work done through October 22, 2007.[1]

---

[1] Plaintiffs' original petition covered fees and expenses through August 17, 2007, but plaintiffs submitted a supplemental petition to include fees and expenses through October 22, 2007. In addition, plaintiffs have withdrawn their request for $2,308.75 for time spent by Cohen attorneys learning how to operate computer software generally useful in their litigation practice. (Pls. Reply 21 n.8). The figures above incorporate both adjustments.

## DISCUSSION

**I.    Legal Standards**

In a Title VII employment discrimination suit, a court may award a "reasonable attorney's fee" to a "prevailing party." 42 U.S.C. § 2000e-5(k). A "prevailing party" is one who "succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2d Cir. 1996). A plaintiff involved in litigation that is resolved by settlement can be a "prevailing party" provided that the settlement "affords the plaintiff all or some of the relief he sought through a judgment," such as "a monetary settlement or a change in conduct that redresses the plaintiffs' grievances." Lyte v. Sara Lee Corp., 950 F.2d 101, 103-04 (2d Cir. 1991).

The essential calculation in determining a reasonable attorney's fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).[2] Hours reasonably expended are hours actually expended by counsel minus "excessive, redundant, or otherwise unnecessary" hours. Id. at 434. In determining whether hours should be excluded, the inquiry is not based on what effort was necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). Even work on ultimately unsuccessful claims is compensable, so long as the "plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims."

---

[2] Hensley dealt with an award of fees under 42 U.S.C. § 1988 rather than § 2000e-5(k), the provision for awards for Title VII litigation. It is nonetheless applicable here because "[c]ases decided under § 1988 (and other similar attorney's fees provisions) . . . are authoritative in the Title VII context." Bridges, 102 F.3d at 58.

3

Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994), quoting Grant, 973 F.2d at 101.

The other component, the reasonable hourly rate, is "the rate a paying client would be willing to pay," bearing in mind "*all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117 (2d Cir. 2007).[3] Multiplying the reasonable hourly rate and the reasonable hours expended returns the "presumptively reasonable fee," which is not normally adjusted thereafter, since the "reasonable hourly rate" and the "hours reasonably expended" already incorporate the essential information needed to calculate a reasonable fee. Arbor Hill, 493 F.3d at 118. In addition to compensation for hours reasonably expended, "awards of attorney's fees in civil rights suits under fee-shifting statutes . . . normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987).

## II.     Plaintiffs' Petition

Plaintiffs submit extensive documentation in support of their petition for fees and expenses. Cohen and Warshaw have provided detailed records itemizing the hours spent by

---

[3] These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Arbor Hill, 493 F.3d at 114 n.3, citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

attorneys and paralegals on the litigation. (Webber Decl. Ex. B; Lee Decl. Ex. A.) For each person, they have provided an hourly billing rate, which is the rate paid by each firm's paying clients. (Webber Decl. ¶¶ 4, 6; Lee Decl. ¶¶ 4, 6.) Cohen has also provided biographies of the attorneys who principally worked on the litigation, detailing their experience in civil rights and employment litigation (Webber Decl. Ex. A), and a declaration from an employment and civil rights litigator at another New York law firm that the rates sought by Cohen are "consistent with the rates charged by my firm and by other firms that regularly represent plaintiffs in employment discrimination in this district." (Outten Decl. ¶ 4.) Each firm also submits an itemized list of expenses incurred in pursuing the litigation. (Webber Decl. ¶¶ 14-15; Lee Decl. ¶¶ 16-17.)

In general, plaintiffs' documentation shows their fees to be reasonable. Altogether, plaintiffs' petition seeks $3,849,653.59 in fees and $444,506.56 in expenses for the two firms. This is, to be sure, a large number, but it is not outlandish in light of the nature of the litigation, which was a very large, complicated and extensive endeavor, and required plaintiffs to clear a number of procedural hurdles. Both firms began work on the case in 1999, when they investigated claims and filed EEOC charges on behalf of individual employees at Willis. (Webber Decl. ¶ 2; Lee Decl. ¶ 2.) After joining forces in 2001, they jointly prepared an amended complaint, briefs in support of class certification, briefs in opposition to defendant's motions for summary judgment, and various motions in limine. (Webber Decl. ¶ 10; Lee Decl. ¶ 11.) They also conducted extensive discovery, including review of documents and the taking of fifteen depositions and the defense of three. (Webber Decl. ¶ 10; Lee Decl. ¶ 10.) Because settlement occurred on the eve of trial, substantial time was devoted to trial preparation. (Webber Decl. ¶ 10; Lee Decl. ¶ 11.) Moreover, the considerable time and money plaintiffs'

5

counsel have invested has been on a contingent basis. (Webber Decl. ¶ 7; Lee Decl. ¶ 7.) Counsel have not been paid for nearly nine years of effort, and have throughout risked the possibility that they would not be paid at all.

Plaintiffs' counsel have also achieved a highly favorable outcome for their clients. The Consent Decree provides for an $8.5 million cash payment to the class. (Consent Decree 12.) This is in line with the total lost wages for the class, as calculated by plaintiffs' expert. (Webber Reply Decl. ¶ 5.) It also provides for extensive injunctive relief aimed at addressing allegedly discriminatory practices at Willis: a performance appraisal system based on objective criteria (Consent Decree 17), the creation of a written compensation policy (id. 18), annual review of compensation decisions for gender-based discrepancies (id. 18-20), and oversight of compliance by an appointed outside monitor (id. 22).

Finally, the amount that plaintiffs seek in fees is comparable to the amount that defense counsel actually charged defendants for its services. (Plevan Decl., dated March 5, 2008 ("Supplemental Plevan Decl."), ¶ 2.) The similarity of the fees does not relieve plaintiffs of the obligation to substantiate the reasonableness of their specific expenditures of time and money, but it is a useful cross-check indicating that plaintiffs' request is not out of proportion to the magnitude of the litigation.

### III. Defendants' Objections

While the above discussion suggests that the award plaintiffs seek is on the whole reasonable, defendants raise a number of specific objections to plaintiffs' petition that must be addressed individually.

A.      Paralegal Rates

Defendants argue that the rates claimed for work done by paralegals is excessive. (D. Opp. 3.) Nine Cohen paralegals and four Warshaw paralegals worked on the litigation, with hourly billing rates between $120 and $210. (Webber Decl. ¶ 4; Lee Decl. ¶ 4.) Defendants cite authority that rates between $50 and $150 are reasonable in this District, and that defendants' law firm itself bills its paralegals at $120. (D. Opp. 3.) Plaintiffs counter that rates up to $180 have been found reasonable. (Pls. Reply 18.) But the authorities cited by plaintiffs are inapposite because in none of them was the issue of paralegal fees a contested issue, and in all three the legal basis for the fee award was substantively different than the fee-shifting statute at issue here. See In re Fibermark, Inc., No. 04-10463, 2004 WL 2418317, at *7 (Bankr. D. Vt. Oct. 22, 2004) (award of fees from a bankruptcy estate); In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 246 F.R.D. 156, 177 (S.D.N.Y. 2007) (fees awarded as a percentage of a common fund); Norman v. Salomon Smith Barney Inc., No. 03 Civ. 4391 (GEL) (S.D.N.Y. May 12, 2006) (approval of class action settlement). However, as there is ample support for $150 per hour as a reasonable rate for paralegals in this District, see, e.g., Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007); Outten Decl. ¶ 5, that rate may be applied here. Accordingly, Cohen's fee award is reduced by $63,585 and Warshaw's fee award is reduced by $3,352.[4]

---

[4] The calculation for the reduction in Cohen's fee award is provided by plaintiffs themselves. (See Pls. Reply 20 n.6.) The reduction in Warshaw's award is calculated by adding up the difference in fees for each of the three paralegals for whom an hourly rate greater than $150 was sought:

B.    Promotion Claim

Defendants also argue that Cohen's award should be reduced for time spent on the class promotion claim, which was withdrawn prior to trial. (Defs. Opp. 6-7.) But work on such a claim is not compensable only if it is "wholly unrelated" in fact or law to plaintiffs' successful claims. Lunday, 42 F.3d at 134. Defendants contend that "plaintiffs should have recognized early on the futility of pursuing the promotion claim" (Defs. Opp. 6), but they do not argue that the claim is "wholly unrelated" to their claim for compensation. And indeed, the promotion claim is related to the compensation claim because alleged discrimination in promotion provided a basis for plaintiffs' expert to exclude "officer title" from his statistical analysis of compensation differences between men and women at Willis. (Webber Reply Decl. ¶ 2.) If that variable had been included, a percentage of the difference in compensation between men and women would have been explained by the fact that the men had, on average, more senior titles at Willis than did women. Thus, even though plaintiffs did not ultimately pursue their promotion claim, the work they did on that claim was factually and legally related to their compensation claim, and contributed to the success of that claim. It is therefore reasonably compensable.

C.    Mahon and Scheller Representation

Defendants' remaining arguments focus on fees claimed by Warshaw. They argue that time Warshaw spent representing two individual employees of Willis, Meg Mahon and Heidi

---

|  | Rate Billed per hour | Hours | Fee difference at $150 per hour |
|---|---|---|---|
| David Plump | $160 | 2.0 | $20 |
| Ellen S. Asnis | $210 | 52.2 | $3,132 |
| Bradley M. Grimm | $200 | 4.0 | $200 |
| *Total* |  |  | *$3,352* |

Scheller, whose individual claims were ultimately not pursued by plaintiffs, is not compensable. (Defs. Opp. 8-10.) As with the argument regarding the promotion claim above, the question is whether plaintiffs' work with respect to these two individuals is "wholly unrelated" to their successful claims for class relief.

With regard to Mahon, much of the time Warshaw spent was "wholly unrelated." On May 10, 2004, Mahon agreed to withdraw her individual claims, to cease serving as a class representative, not to provide evidence in support of class certification, and not to provide evidence for *any* motions or trial without first submitting to a deposition. (Defs. Opp. 9; Plevan Decl. ¶¶ 19-20; id. Ex. I.) Despite this agreement, and despite Mahon's never submitting to a deposition (see Plevan Decl. Ex. K), Warshaw continued to devote time to Mahon after this date (Plevan Decl. Ex. C 33-37). Plaintiffs do not explain how this time was in any way related to their class claims, and in light of Mahon's severely diminished role, it is difficult to conceive how it could be related to those claims. Accordingly, time spent by Warshaw after May 10, 2004, speaking to or about Mahon or otherwise working on matters related to her, is not compensable. The fees sought for this time total $49,519 (Plevan Decl. Ex. C 37), and plaintiffs' award is reduced by this amount.[5]

---

[5] The Court recognizes that some portion of this time was not spent on Mahon, but Warshaw's practice of "block-billing" – combining multiple tasks into a single billing entry – makes it impossible for the Court to separate the Mahon-related work from other work. Because these entries lack "sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed," they will be excluded entirely from plaintiffs' fee request. Mautner v. Hirsch, 831 F. Supp. 1058, 1077 (S.D.N.Y. 1993) (excluding in their entirety fee requests based on vague billing entries), aff'd in relevant part, 32 F.3d 37 (2d Cir. 1994).

However, time spent on Mahon prior to May 10, 2004, is compensable. The question is not whether a claim is ultimately successful, but whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant, 973 F.2d at 99. Plaintiffs have offered sufficient proof that it was reasonable, because Mahon was an employee of Willis, who had her own colorable claims, and whose testimony could help buttress the claims of other class members alleging sex discrimination. (See Lee Reply Decl. ¶ 10.) Thus, time spent by Warshaw on Mahon-related issues prior to May 10, 2004, is compensable.

Defendants make a similar argument with respect to Scheller. They argue that work done for her is not compensable because potential recovery on her individual claims was reduced significantly by a partial grant of summary judgment in April 2005, and potential recovery on her class claims was always "minimal at best" because she was on a paid leave of absence for all but two months of the class period. (Defs. Opp. 10.)

These circumstances do not justify a limitation on Warshaw's award. First, a significant percentage of Warshaw's work with Scheller was prior to April 2005, and defendants offer no basis to conclude that this work was "wholly unrelated" to the class claims, or that the time spent was not reasonable at the time the work was performed. Second, the partial grant of summary judgment left Scheller's claim for disparate pay intact, which means that work Warshaw did on this individual claim after April 2005 was compensable because it was reasonably related to the related class claim of pay discrimination. Third, whatever happened with Scheller's individual claims, she remained a class representative, and as such, she was an important part of the case plaintiffs built. Scheller "provided significant factual information" in support of plaintiffs' class claims (Lee Reply Decl. ¶ 19), and appears to have played a role in convincing a key witness to

agree to testify at trial (see Scheller Decl.). That Scheller's recovery would be limited only to the two months she worked for Willis would not prevent her from being an effective witness to discrimination that was alleged to have occurred there, and therefore a significant asset to the recovery by other class members. Accordingly, there is no reason to conclude that Warshaw's work with Scheller was an unreasonable expenditure of time.

D. <u>Vague Billing Entries</u>

Defendants next argue for reducing fees to Warshaw because of billing entries that are "vague." (Defs. Opp. 15-18.) Attorneys seeking fee awards are required to submit "contemporaneous time records" of the work they have performed that "specify, for each attorney, the date, the hours expended, and the nature of the work done." <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983). Counsel is not required to "record in great detail how each minute of his time was expended," but he should "identify the general subject matter of his time expenditures." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 n.12 (1983). A time entry is vague if it lacks "sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed." <u>Mautner v. Hirsch</u>, 831 F. Supp. 1058, 1077 (S.D.N.Y. 1993), <u>aff'd</u> <u>in</u> <u>relevant</u> <u>part</u>, 32 F.3d 37 (2d. Cir. 1994).

A reduction for vagueness is not justified in this case. Defendants identify a handful of time entries they contend are vague because they do not "describe the nature or purpose of the various tasks performed." (Defs. Opp. 16-17.) While it may be true that, read in isolation, some entries appear vague, for most the nature or purpose becomes clear from reading the time entries immediately preceding or following them. (See Lee Reply Decl. ¶¶ 51-58.) Moreover, even

11

entries that are vague when read in isolation are not particularly common in Warshaw's billing records; in most entries, Warshaw identified the task performed, the subject of the work, and the other parties involved, even to the point of being repetitive. Warshaw's billing records are not so vague as to preclude a review for their reasonableness, and hence, no reduction in fees is justified on that ground.

      E.      <u>Block-Billing</u>

Defendants also argue for a reduction based on Warshaw's practice of "block-billing," that is, the aggregation of multiple tasks into a single billing entry. Block-billing can make it difficult for a court to conduct its reasonableness analysis, because a single billing entry might mix tasks that are compensable with those that are not, or mix together tasks that are compensable at different rates. However, block billing is not automatically disfavored by courts in this district. "[M]ultiple entries comply with the Second Circuit's requirement of specificity," because such entries are consistent with the <u>Carey</u> dictate that entries "specify the date, hours expended, and nature of the work done." <u>Meriwether v. Coughlin</u>, 727 F. Supp. 823, 827 & n.5 (S.D.N.Y. 1989), citing <u>Carey</u>, 711 F.2d at 1148. Moreover, block-billed entries "conform to what a reasonable client compensating her attorneys on an hourly basis might expect them to delineate in periodic invoices seeking the payment of fees." <u>Sylvester v. City of New York</u>, No. 03 Civ. 8760, 2006 WL 3230152, at *6 (S.D.N.Y. Nov. 8, 2006).

Defendants seek an across-the-board reduction for block-billing, even though they do not identify a single block-billed entry that contains tasks that are themselves unreasonable or duplicative. Some courts have ordered across-the-board reductions based entirely on the "inherent difficulties the Court would encounter in attempting to parse out whether the number

12

of hours spent on the work performed was reasonable." Aiello v. Town of Brookhaven, No. 94 Civ. 2622, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (ordering reduction of 10%); see also Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (ordering 15% reduction). But more often, courts have ordered such reductions for block-billing only where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate. See, e.g., Molefi v. Oppenheimer Trust, No. 03 Civ. 5631, 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007) (reduction of 15% for block-billing where "total number of hours billed, on the whole, [could not] withstand the test of reasonableness"); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (reduction because block-billing "renders it difficult to account properly for the expenses related solely to [the compensable] matter"); Williams v. New York City Housing Authority, 975 F. Supp. 317, 328 (S.D.N.Y. 1997) (reduction for "vague and clustered entries" where entries contained items to be compensated at different rates).

The latter approach is more consistent with the requirements for fee awards in this Circuit. So long as an attorney's records specify "the date, the hours expended, and the nature of the work done," Carey, 711 F.2d at 1148, they are sufficient. This is not to say that block-billing is prudent, as attorneys who do it run the risk of significant reductions when the practice makes it difficult or impossible to distinguish duplicative or non-compensable tasks from those that are compensable. However, absent evidence that plaintiffs' block-billing has obscured such unreasonable billing, the Court will not impose an across-the-board penalty simply because a law firm has engaged in a generally accepted billing practice.

F.  Duplicative Efforts

Defendants next argue that plaintiffs' fee award be reduced for duplicative efforts by Warshaw, in respect of its review of briefs and motions of co-counsel, and its attendance at depositions. There is no merit to defendants' contention that Warshaw's review of certain briefs and motions drafted by Cohen is duplicative. Such review is part of the normal practice of any responsible lawyer working in collaboration with another. Had Warshaw's sole or primary role in the litigation been to review the work product of others, such time would perhaps not have been compensable without a showing of a particularized benefit. See, e.g., In re AMF Bowling Sec. Litig., 334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004) (reducing award for attorney whose work primarily "appears to consist of conferrals with co-counsel and reviewing and offering editorial comments on the work of others"). But that was not Warshaw's role: it was counsel to two of the five persons who were class representatives at various points in the litigation, one of whom was a class representative until the very end. As such, it represented Willis employees who "worked in different locations and had access to somewhat different information" than did the Willis employees represented by Cohen. (Lee Reply Decl. ¶ 43.) Moreover, to the extent that Warshaw worked on the same briefs as Cohen, both Lee and Webber attest that their work was not duplicative, with "one firm draft[ing] some sections while the other firm drafted different sections." (Lee Reply Decl. ¶ 42; see also Webber Reply Decl. ¶ 6.) Because Warshaw appears to have been a substantive partner to Cohen in the class litigation, there is no basis for construing their work on jointly filed briefs and motions as duplicative.

The situation is different with respect to depositions. Defendants complain of the number of Warshaw attorneys attending certain depositions. There is no doubt that it is often reasonable

14

for a second attorney to assist in a deposition or a hearing. Carey, 711 F.2d at 1146. Defendants' complaint here, however, is not that Warshaw sent a second attorney to some depositions, but that Warsaw sent one, two, and even three attorneys to depositions where it was not conducting or defending the deposition, and where Cohen already had a second attorney present. (See Plevan Decl. Ex. K.) Thus, on seven different deposition days, there were three or more attorneys in attendance on behalf of plaintiffs. (Id.) By contrast, the defendants only twice had more than two attorneys in attendance, and for no deposition did they bill their client for even a second attorney's time. (Id.) Moreover, plaintiffs' second and third attorneys were often partners rather than associates, meaning that they were billing $400 per hour or more for auxiliary support. Such practices are plainly excessive in the typical case, and plaintiffs have failed to explain why they are not excessive here. Accordingly, plaintiffs are directed to adjust their fee application to eliminate the time spent by third, fourth and fifth attorneys in preparing for and attending depositions, and reducing by half the billing rates of any partners who were attending a deposition in an assisting role.[6]

G.   Management Inefficiencies

Finally, defendants argue for reductions in Warshaw's fees because of inefficiencies in the way it managed its resources. First, they argue for a reduction based on the high degree of turnover, noting that in eight years of litigation, nine different attorneys worked on the matter. While excessive turnover may be grounds for a reduction in fee awards, because of the

---

[6] As plaintiffs submit separate fee requests for the two law firms, and the Court cannot always identify which lawyers were providing valuable assistance, it would be arbitrary for the Court simply to assume that the Warshaw attorneys were in every case the ones whose fees should be eliminated or reduced. Plaintiffs' lawyers are better placed to decide how these cuts can most fairly be allocated between the two firms.

duplication of labor required when new attorneys need to familiarize themselves with the case, defendants have not established that the use of nine attorneys over eight years qualifies as excessive. Cf. Daiwa Special Asset Corp. v. Desnick, No. 00 Civ. 3856, 2002 U.S. Dist. LEXIS 23073, at *7-8 (S.D.N.Y. Dec. 3, 2002) (reducing award for excessive turnover where 17 lawyers worked on a case over 27 months). Therefore, no reduction is warranted on that basis.

Second, defendants argue for a reduction based on allegedly inefficient staffing by plaintiffs' counsel. Defendants observe that defense counsel "worked approximately 33% more hours on the case than plaintiffs' counsel did," and yet billed a comparable total fee. (Supplemental Plevan Decl. ¶ 6.) The reason for this is that defendants staffed more associates and fewer partners than did plaintiffs, and hence had a relatively lower average billing rate. (Id. ¶ 12.) Defendants contend that this lower usage of associates by plaintiffs is evidence of a failure "to delegate work to a timekeeper at the appropriate level." (Id. ¶ 9.) But an equally plausible explanation is that plaintiffs' relative reliance on more experienced partners allowed them to devote fewer hours to any given task. Absent a specific showing by defendants of tasks performed by partners at Warshaw that should have been performed by less experienced associates, there is no reason to think that Warshaw was inefficient in staffing the litigation.

Paying clients are undoubtedly more concerned about the result achieved and the overall cost of the service provided than about whether that cost represents many hours expended by low-billing inexperienced associates or fewer hours expended by high-billing but perhaps more efficient senior partners. Judged by that standard, plaintiffs' counsel accomplished an excellent result for its clients at a reasonable price. Hence, there will be no reduction in fees on the basis of inefficient staffing by Warshaw.

## CONCLUSION

For the foregoing reasons, plaintiffs' petition for award of attorney's fees and expenses is granted in part. Plaintiffs' requested fees are reduced by $63,585 for the Cohen firm and by $3,352 for the Warshaw firm for excessive billing for paralegal time. The award for the Warshaw firm is reduced by $49,519 for time spent on plaintiff Mahon after May 10, 2004. Plaintiffs are directed to calculate appropriate reductions implementing the Court's ruling with respect to excessive staffing of depositions, and to submit an explanation of the calculation and a proposed judgment for a fee award consistent with this Opinion.

SO ORDERED.

Dated: New York, New York
April 7, 2008

*[signature]*
GERARD E. LYNCH
United States District Judge